[No. A030674. First Dist., Div. Two. July 20, 1987.]

MARIANNE TRUTA, Plaintiff and Appellant, v.
AVIS RENT A CAR SYSTEM, INC., et al., Defendants and
Respondents.

## COUNSEL

Eugene J. Majeski, Mark Bonino, Paul D. Herbert, Dorothy McArthur Landro, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Joseph W. Cotchett, Susan Illston, Bruce L. Simon, Alan Haverty and Cotchett & Illston for Plaintiff and Appellant.

William I. Edlund, Walter R. Allan, Bernard Zimmerman, Thomas C. Lee, David S. Winton, Pillsbury, Madison & Sutro, Robert E. Gooding, Jr., Martha K. Cunningham, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Kathy J. Bagdonas, Robert D. Raven, Morrison & Foerster, Weyman I. Lundquist, Robert E. Borton and Heller, Ehrman, White & McAuliffe for Defendants and Respondents.

OPINION

**BENSON, J.**—This is an appeal from a judgment of dismissal entered after a demurrer to the complaint of Marianne Truta (plaintiff) was sustained without leave to amend. Plaintiff instituted this action for herself personally and on behalf of a class of persons similarly situated. The defendants in whose favor judgment was rendered are Avis Rent A Car System, Inc., The Hertz Corporation, Budget Rent A Car Corporation, and National Car Rental System, Inc.

The substance of plaintiff's six-count complaint is that within the four years preceding the filing of the action, plaintiff and other California residents had rented automobiles from the various defendants. Incidental to the rental of these automobiles, plaintiff and the class she purportedly represents agreed to pay an additional fee to defendants for a "collision damage waiver" (hereafter CDW).[1] The CDW, which plaintiff alleges to be essentially uniform for all car rentals in California, provided that for a fee of $6 per day defendants agreed to assume responsibility (subject to certain terms and conditions) for the term of one day for collision or upset damage or loss to the vehicle in an amount up to $1,000. Attached to the complaint was a copy of the contract executed by plaintiff Truta and defendant Avis Rent A Car System, Inc. The pertinent provision of that contract states:

"LOSS OR DAMAGE TO THE CAR. I'LL pay you for all loss of and damage to the car regardless of who is at fault. My responsibility for accidental collision or upset damage won't exceed the amount shown in box 38 [the amount shown was $1,000] on the other side of this agreement. If I've accepted the 'collision damage waiver' option, I won't have to pay anything. But I will be responsible for the full amount of the damage if I violate any of the terms of this agreement or if I abuse the car or drive it recklessly or while under the influence of alcohol or drugs. I won't have to pay for accidental loss or damage from fire, theft, or other causes that are normally covered by a standard comprehensive physical damage insurance policy. I will report the loss of or any damage to the vehicle promptly by calling the phone number listed on the other side of this agreement."

The first cause of action of the complaint alleges that defendants are engaged in the business of insurance in violation of Insurance Code section 700 in that none of the defendants has been admitted to transact any class of insurance in California.[2] Accordingly, the complaint alleges, defendants are

---

[1] Although plaintiff consistently refers to collision damage waiver as "the insurance contract" we will refer to the provision with the same language used in the agreement.

[2] Section 700 of the Insurance Code provides: "(a) A person shall not transact any class of insurance business in this State without first being admitted for such class. Such admission is

engaged in unlawful business practices constituting unfair competition within the meaning of Business and Professions Code section 17200.[3]

The second cause of action alleges that because defendants are charging excessive rates for insurance in violation of section 1852 of the Insurance Code, they are consequently engaged in unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

Plaintiff's third and fourth causes of action sound in fraud and negligent misrepresentation respectively. The basis for these claims is that defendants represented in writing two facts that were not true: 1) That the CDW was not a contract for insurance coverage; and 2) that without the CDW, plaintiff would be responsible for loss or damage to the rented vehicle, and consequential damages to the defendants, up to certain limits, regardless of negligence attributable to plaintiff. Plaintiff maintains that the first representation was untrue and misleading in that the CDW provided for the sale of insurance; the second was untrue in that members of the class who used reasonable care in the operation of the rented vehicles were not liable to defendants for any amount of damage to the rented automobile or consequent loss to the defendants pursuant to section 1955 of the Civil Code.

The fifth cause of action alleges that the CDW is unconscionable for five reasons which we summarize as follows: 1) the provision provides no protection for most circumstances, a fact which defendants concealed; 2) its cost is excessive within the meaning of the California Insurance Code and far in excess of a price that would be determined in a competitive business environment; 3) the language of the provision is misleading; 4) the manner in which the rental contracts are printed, worded, packaged and presented disguises the existence of a major portion of the contractual provisions; and 5) defendants obtained unfair advantage by use of their superior bargaining position.

The sixth cause of action is for price fixing in violation of section 16720 of the Business and Professions Code. Plaintiff alleges that defendants combined, conspired and agreed together to fix and maintain prices, terms and conditions for the rental of automobiles in California.

secured by procuring a certificate of authority from the commissioner. Such certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this State prerequisite to its issue."

[3] Section 17200 of the Business and Professions Code provides: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

With respect to the first, second and fifth causes of action, the complaint prays for injunctive relief, restitution and damages. The complaint also requests compensatory damages for the third and fourth causes of action, punitive damages for the third cause of action, and treble damages on the sixth cause of action.

A single demurrer was filed on behalf of all the defendants on the grounds that the complaint, and each cause of action contained therein, failed to state facts sufficient to constitute a cause of action. With respect to the first two causes defendants asserted that the CDW is only an ancillary and incidental part of the car rental contract and cannot be considered insurance. As for the third and fourth causes of action they argued in essence that as a matter of law the representations alleged by plaintiff were true. With regard to the fifth cause of action defendants claimed that unconscionability is only a defense to enforcement of a contract and not a ground for affirmative relief. Defendants also contended that plaintiff's sixth cause of action did not meet the high degree of particularity required of Cartright Act claims. In addition, defendants averred that plaintiff's failure to exhaust her administrative remedies before the California Insurance Commissioner required dismissal of each and every cause of action.

In addition to the points and authorities in support of defendants' demurrer to plaintiff's complaint, defendants submitted exhibits of four superior court decisions from foreign jurisdictions dismissing similar actions on the grounds that the CDW is not insurance.[4] Additional exhibits included five opinions from attorneys general or insurance departments in other states.[5] Each document opined that the CDW was not insurance.

■■■■■ After plaintiff filed her points and authorities in opposition to defendants' demurrer, defendants filed a request that the court take judicial notice of a memorandum, dated October 23, 1968, rendered by the California Department of Insurance.[6] The memorandum concerned a

---

[4] The decisions were *Burrell* v. *Avis* (Fla. Cir. Ct., June 21, 1984) No. 83-6162 C-7; *Russell* v. *Hertz Co.* (Cir. Ct. Cook, Ill., Feb. 28, 1983) 82 CH 6632; *Korn et al.* v. *Avis et al.* (Pa. Ct. of Com. Pleas, Philadelphia Co., Feb. 10, 1977) No. 1670; *Klein* v. *National Car Rental* (N.Y. Supreme Ct., Spec. Term, May 4, 1983) No. 22720/82; affd. (N.Y. Supreme Ct., App. Div., Apr. 24, 1984) No. 19118-19-19A-19B, leave to appeal den., 63 N.Y.2d 605 (Sept. 18, 1984).

[5] Opinions from the Florida Attorney General, New York Attorney General, North Carolina Insurance Department, Texas State Board of Insurance and the Insurance Department of Iowa were included. However, a subsequently revised opinion by the New York Attorney General that the CDW is insurance was submitted at oral argument before this court. (See Ops.N.Y.Atty. Gen. 86-F9.)

[6] Case law permits judicial notice to be taken of agency memoranda. (See, e.g., *People* v. *French* (1978) 77 Cal.App.3d 511, 521 [143 Cal.Rptr. 782]; *ABC Acceptance* v. *Delby* (1957) 150 Cal.App.2d Supp. 826, 828 [310 P.2d 712].) Moreover, the request to take judicial notice

provision similar to the CDW provision before us, which was contained in contracts between the Ford Rent-A-Car System and individuals who rented Ford's vehicles. The memorandum concluded that Ford Rent-A-Car System was not involved in providing insurance.

Thereafter, defendants Hertz Corporation, Budget Rent A Car Corporation and National Car Rental System, Inc., moved for judgment on the pleadings on the first five causes of action on the grounds plaintiff had not alleged that she had any contractual or other relationship with these defendants and therefore she was not a member of the class of plaintiffs she purported to represent and lacked standing to sue these defendants. The record before us does not reflect a ruling on that motion.

A hearing on the demurrer took place. However much of what transpired at the time of hearing occurred in chambers and was not transcribed. The order sustaining the demurrer without leave to amend does reflect that plaintiff elected not to amend her complaint.

■ A threshold issue on appeal is whether plaintiff was required to exhaust an administrative remedy prior to filing the action in superior court. ■ The doctrine of exhaustion of administrative remedies was extensively discussed in *McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230, 1234-1235 [231 Cal.Rptr 304]. It is sufficient to merely reiterate that ". . . where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715]; see also *McKee* v. *Bell-Carter Olive Co., supra,* 186 Cal.App.3d at p. 1235; *County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 73 [222 Cal.Rptr. 750].) However, "the doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. [Citation.] It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction [citation], when pursuit of an administrative remedy would result in irreparable harm [citations], when the administrative agency cannot grant an adequate remedy [citations], and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be. [Citations.]" (*Ogo Associates* v. *City of Torrance* (1974) 37 Cal. App.3d 830, 834 [112 Cal.Rptr. 761]; *McKee* v. *Bell-Carter Olive Co., supra,* 186 Cal.App.3d at pp. 1234-1235; *County of Contra Costa* v. *State of California, supra,* 177 Cal.App.3d at p. 73.)

Several courts have held that exhaustion of administrative process may be required even where the administrative agency has no power to grant a

---

was unopposed in the trial court and the subject memorandum has been referred to on appeal.

remedy such as damages. This is because the exhaustion doctrine facilitates the development of a complete record that draws upon administrative expertise and promotes judicial efficiency. (See *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379] and cases cited therein.) "Whether the exhaustion doctrine is to be applied in a particular instance because of its extreme utility to the court and the agency itself to initially engage administrative expertise, or is to be held inapplicable because of the alleged inadequacy of the administrative remedy, has been determined by a qualitative analysis on a case-by-case basis with concentration on whether a paramount need for agency expertise outweighs other factors." (*Id.* at p. 981.) We find no such need in this case.

 The record indicates that the defendants moved to take judicial notice of a legal memorandum made available by the Department of Insurance concerning Ford Rent-A-Car System. According to the memorandum, Ford Rent-A-Car leased automobiles to the public whereby the lessees of the automobiles were liable for the first $100 damages due to fire, theft and collision.[7] If a lessee elected to pay for "collision protection," he was no longer liable for the $100 deductible amount. The author of the Department of Insurance memorandum opined as follows: "No insurance coverage is provided for this $100 amount. Rather, the lessor simply agrees not to hold the individual renting a car liable for either negligence or contractual liability for damage to the vehicle. The question here is whether this provision concerning the $100 deductible is doing an insurance business.

"My conclusion is that the Ford Rent-A-Car System operator is not involved in providing insurance. The subject charge is not accumulated to pay any liabilities or costs incurred by the rentor. Rather, the system operator has simply, by contract, released the lessee from responsibility for any damage to the property of the lessor. This is not a spreading of risk within insurance concepts, but is rather an allocation of risk by contractual agreement. As the parties can contract to place full responsibility for damage on the lessee, it seems no less reasonable that they can contract to place this responsibility on the lessor." (Italics omitted.)

Without, at this point, determining whether we agree with the Department of Insurance's memorandum, it is clear that the agency has taken a

---

[7] The memorandum specifically describes the operation as follows: "The Ford Motor Company has a plan whereby, under separate franchise, they [*sic*] license any Ford dealer to operate a Ford Rent-A-Car System station. Cars are leased by Ford to the franchise holding dealer, who in turn leases them to members of the public. As part of the agreement between Ford and the dealer, insurance is provided including $100 comprehensive fire, theft and collision. By the separate agreements, the dealer in his lease of cars from Ford agrees to be liable for all damage, and in turn the dealer extracts the same agreement from lessees from him. Since the above insurance exists, this liability extends only to the $100 deductible amount. What is named 'collision protection' is sold by the lessor to cover the $100 deductible." (Italics omitted.)

position that a car leasing business may, by contract, relieve a lessee from liability for damage done to the leased vehicle without the agreement constituting insurance. Since the Department of Insurance has taken this position, plaintiff may justifiably assert that she knows what the administrative agency's decision in this case would be. Because the Department of Insurance's memorandum was available to the lower court, plaintiff was not required to exhaust her administrative remedy.

■ We next consider the question of whether defendants, by virtue of the CDW provision of the rental agreement, are engaged in the insurance business and therefore in violation of Insurance Code section 700.

■ Section 22 of the Insurance Code defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Case law has construed the statute as requiring two elements: "(1) a risk of loss to which one party is subject and a shifting of that risk to another party; and (2) distribution of risk among similarly situated persons." (*Metropolitan Life Ins. Co.* v. *State Bd. of Equalization* (1982) 32 Cal.3d 649, 654 [186 Cal.Rptr. 578, 652 P.2d 426].) While a persuasive argument can be made that the CDW transaction meets this criteria, the mere fact that a contract contains these two elements does not necessarily mean that the agreement constitutes an insurance contract for purposes of statutory regulation.

"A statute designed to regulate the business of insurance . . . is not intended to apply to all organizations having some element of risk assumption or distribution in their operations. The question of whether an arrangement is one of insurance may turn, not on whether a risk is involved or assumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose." (12 Appleman, Insurance Law and Practice (1981) § 7002, p. 14, fns. omitted.) This is because "insurance regulatory laws are not properly construed as aimed at an absolute prohibition against the inclusion of any risk-transferring-and distributing provisions in contracts for services or for the sale or rental of goods. In short, the presence of a small element of insurance, if one wishes to call it that, closely associated with the predominant element of the transaction— the element that gives the transaction its distinctive character—does not conclusively demonstrate that the transaction is within the reach of insurance regulatory laws." (Keeton, Insurance Law (1971) § 8.2(c), p. 552.)

In analyzing whether a contract constitutes insurance it is advised that two inquiries be made: "To what extent, in each case, did the specific transactions or the general line of business at issue involve one or more of the evils at which the regulatory statutes were aimed? And were the ele-

ments of risk transference and risk distribution, characteristic of transactions at which the regulatory statutes were aimed, a central and relatively important element of the transactions or instead merely incidental to other elements that gave the transactions their distinctive character?" (Keeton, *op. cit. supra.*)

A review of the California appellate decisions concerned with the question of whether a particular entity was engaged in the business of insurance within the meaning of the regulatory statutes of this state reveals that the analytical approach mentioned in Keeton has been utilized in this state. For instance, in *California Physicians' Service* v. *Garrison* (1946) 28 Cal.2d 790 [172 P.2d 4, 167 A.L.R. 306], professional medical services were rendered to low-income patients who paid monthly membership dues to a nonprofit corporation. Payment for these services was made through a fund created by the dues received by the nonprofit corporation. In affirming the trial court's determination that the organization was not involved in the insurance business the Supreme Court stated: "Absence or presence of assumption of risk or peril is not the sole test to be applied in determining [the corporation's] status. The question, more broadly, is whether, looking at the plan of operation as a whole, 'service' rather than 'indemnity' is its principal object and purpose." (*Id.* at p. 809.) The *Garrison* court in reaching its conclusion also looked to the purpose and nature of the regulatory provisions arising under the Insurance Code, ". . . particularly those relating to the maintenance of reserves and to the regulation of investments and financial operations," and observed: "The extensive insurance regulations . . . are designed to protect the insured, or the public, from the insurer. [Citation.] Such regulations become important only if the insurer has assumed definite obligations. Conversely, it is evident that they are not intended to apply where no risk is assumed and no default can exist. . . ." (*Id.* at p. 810.)[8]

Similar reasoning was employed in *Transportation Guar. Co.* v. *Jellins* (1946) 29 Cal.2d 242 [174 P.2d 625]. In *Jellins,* the court was called upon to determine whether two truck maintenance contracts containing provisions that the contractor agreed to insure the vehicles for the owner in an authorized insurance company constituted insurance contracts. Recognizing that nearly every business venture entails some assumption of risk, the high court stated: "We are satisfied that a sound jurisprudence does not suggest

---

[8] Parenthetically we observe that the Court of Appeal in *Maloney* v. *American I. M. & H. Assn.* (1953) 119 Cal.App.2d 319 [259 P.2d 503], had little difficulty in determining a nonprofit corporation was involved in the business of insurance for regulatory purposes where "[v]iewing the plan of operation as a whole, it clearly appears that its only object and purpose was in the nature of an 'indemnity' and not merely the furnishing of a 'service.'" (*Id.* at p. 326.)

the extension, by judicial construction, of the insurance laws to govern every contract involving an assumption of risk or indemnification of loss; that when the question arises each contract must be tested by its own terms as they are written, as they are understood by the parties, and as they are applied under the particular circumstances involved." (*Id.* at p. 248.) Quoting *Jordan* v. *Group Health Assn.* (D.C.Cir. 1939) 107 F.2d 239, 247-248, the court continued: "That an incidental element of risk distribution or assumption may be present should not outweigh all other factors. If attention is focused only on that feature, the line between insurance or indemnity and other types of legal arrangement and economic function becomes faint, if not extinct. . . . But obviously it was not the purpose of the insurance statutes to regulate all arrangements for assumption or distribution of risk. That view would cause them to engulf practically all contracts, . . . The fallacy is in looking only at the risk element, to the exclusion of all others present or their subordination to it. The question turns, not on whether risk is involved or assumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose." (*Id.* at p. 249.)

After reviewing the entire contract, the *Jellins* court concluded that the major purpose of the underlying agreement was to supply labor. The court then stated: "Plaintiff's obligations (with their reciprocal contractual rights) to make repairs, to maintain the truck in good running order, and to keep a truck constantly available to the owner except for reasonable service periods, do not in our opinion, make the plaintiff an insurer. Such obligations are similar to those ordinarily undertaken by a lessor of motor vehicles and, unless we are prepared to hold that any lessor of such vehicles, entering into such a contract, is in the insurance business, then we should not hold that plaintiff is, on that account, in such business." (*Id.* at p. 253.)

▪ The principal object and purpose of the transaction before us, the element which gives the transaction its distinctive character, is the rental of an automobile. Peripheral to that primary object is an option, available to the lessee for additional consideration, to reallocate the risk of loss (up to the sum of $1,000) to the lessor in the event the vehicle sustains damage during the rental term. Thus, as in *Jellins,* after reviewing the entire contract we are satisfied that this tangential risk allocation provision should not have the effect of converting the defendants as contracting lessors into insurers subject to statutory regulation.

We also give deference to the Department of Insurance's interpretation of the Insurance Code (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 850 [187 Cal.Rptr. 432, 654 P.2d 202]; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250,

586 P.2d 564]) and we find a clear expression that the CDW transaction does not lend itself to the insurance regulatory statutes. As previously stated, the department's analysis of Ford Rent-A-Car System where the lessor had, by contract, released the lessee from responsibility for any damage to the vehicle, opined that "[t]his is not a spreading of risk within insurance concepts, but is rather an allocation of risk by contractual agreement. As the parties can contract to place full responsibility for damage on the lessee, it seems no less reasonable that they can contract to place this responsibility on the lessor." (Italics omitted.) The opinion further explains: "If the situation were such that the lessor was agreeing to pay any monies to third parties, then this conclusion would be different. Such an agreement would be similar to the type of coverage which has been extended by some companies in the past to reimburse for expenses incurred by an individual as a result of a deductible provision. That type of service would clearly be insurance. Here, there is no interest of the public which would be protected by our assuming jurisdiction. Since the lessor is not agreeing to pay anybody anything, but is simply agreeing not to hold the lessee liable, there is no need for accumulating reserves. The solvency or insolvency of the lessor does not affect this contractual provision." (Italics omitted.)

It is obvious from the above that the Department of Insurance does not consider the California Insurance Code as designed to regulate the type of practice contained in the CDW transaction before us. Thus, on the basis of existing case law, legal commentary and the memorandum of the regulatory agency entrusted to enforce this state's insurance statutes, we hold that the CDW provision contained in automobile rental agreements does not constitute an insurance contract for purposes of statutory regulation.

We now proceed to an examination of plaintiff's complaint in order to determine the validity of the trial court's ruling that no cause of action has been stated. In doing so we rely on certain well-established rules of construction.

■ Initially we observe that "a complaint is invulnerable to general demurrer if on any theory it states a cause of action. [Citations.]" (*Johnson v. Clark* (1936) 7 Cal.2d 529, 536 [61 P.2d 767].)

"In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) The cases declaring and applying this rule are numerous. (See *Buxbom v. Smith* (1944) 23 Cal.2d 535, 542 . . . ["While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by

technicalities, strict rules of construction, or useless forms"]; see also, 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading § 396, pp. 446-447, and cases cited therein.)

■ On the other hand, this statutory rule of liberal construction, while an explicit repudiation of the common law view that a pleading must be taken most strongly against the pleader, is subject to a few exceptions. One such exception is found in cases involving (1) a defective complaint, (2) the defect pointed out by demurrer, (3) the demurrer sustained with leave to amend, and (4) the plaintiff unwilling or unable to remove the defect. (4 Witkin, *op. cit. supra,* §§ 402, 403, pp. 451-452.) Here, as we earlier noted, plaintiff elected not to amend her complaint, and we conclude that under these circumstances it is appropriate to determine that plaintiff has stated her case as favorably as possible and that all ambiguities within the pleading must be resolved against the pleader. (*Id.* at p. 452.)

■ Since plaintiff's first and second causes of action alleged violations of sections 700 and 1852 of the Insurance Code and we have concluded that defendants were not involved in the business of insurance, no causes of action were stated by the two counts.

■ Plaintiff's third and fourth causes of action for fraud and negligent misrepresentations were based on two representations. The first, that the rental agreement was not a contract for insurance, is clearly not false in light of our above-stated conclusion. The second, that without acceptance of the CDW provision, plaintiff would be responsible for loss or damage to the rented vehicle up to certain limits, regardless of negligence attributable to plaintiff, requires further consideration.

The third and fourth causes of action in plaintiff's complaint allege that the second representation was false in that "Civil Code, Section 1955, provides that lessees of personal property for a term of 20 days or less may not be held liable for damage to the leased property which was not caused by the lessee's fault, even if the lease agreement provides otherwise."[9]

In opposition, defendants maintain that the lease of a vehicle is governed by Civil Code section 1929[10] which refers to "injuries" in addition to "dete-

---

[9] Civil Code, section 1955 explicitly states: "Except as otherwise agreed by the lessor and the lessee in lease agreements for a term of more than 20 days, one who leases personal property must deliver it to the lessee, secure his or her quiet enjoyment thereof against all lawful claimants, put it into a condition fit for the purpose for which he or she leases it, and *repair all deteriorations thereof not occasioned by the fault of the lessee and not the natural result of its use.*" (Italics supplied.)

[10] Civil Code section 1929 provides: "The hirer of a thing must repair all *deteriorations or injuries* thereto occasioned by his want of ordinary care." (Italics supplied.)

riorations," and conclude that this section's rights and obligations may be modified by contract to provide that a lessee may be held responsible, without fault, for loss or damage from any cause. (Civ. Code, § 3268; *Kaye* v. *M'Divani* (1935) 6 Cal.App.2d 132, 134-135 [44 P.2d 371].)

Plaintiff misconceives the purpose of Civil Code section 1955. The section "contains a statutory declaration of the obligations of a lessor of personalty and declares the duty of a bailor in terms of an implied warranty of the fitness of the chattel for the use intended." (*Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 249, fn. 1 [85 Cal.Rptr. 178, 466 P.2d 722].) Thus, the bailor merely warrants that he has exercised reasonable care to ascertain that the chattel is safe and suitable for the purpose for which it is hired; he is not, through the statute, liable for all damages caused by or to the chattel. (*Ibid.*; see also, *Tierstein* v. *Licht* (1959) 174 Cal.App.2d 835, 841 [345 P.2d 341].) Since Civil Code section 1955 is inapplicable to the damage caused by collisions (other than collisions caused by a defective leased chattel), we agree with defendants that Civil Code sections 1929 and 3268 are applicable to the case at bench. Accordingly, the parties could, by contract, make the lessees of the automobiles liable for loss or damage from any cause. Having so determined, we find no misrepresentation in the statement that plaintiff would be liable for damage to the vehicle if she did not elect to pay for the CDW.

Turning now to the complaint's fifth cause of action we first observe that it incorporates the allegations of the first three causes of action and then asserts the CDW provision to be "unconscionable" for five reasons which we have previously summarized.[11] Defendants demurred primarily on the

---

[11] More specifically the fifth cause of action states: "Said [CDW provisions] were unconscionable for the following reasons: "(i) The [CDW] provided no benefit, protection or insurance coverage under most circumstances, which fact was concealed by defendants, and each of them.

"(ii) The price of the [CDW] was excessive within the meaning of the California Insurance Code, and far in excess of a price that would be determined in a competitive business environment.

"(iii) The language of the [CDW] misled, unduly influenced, and intimated the plaintiffs by stating that the plaintiffs were absolutely liable for damages to the rental vehicle regardless of any negligence attributable to plaintiffs, despite the fact that if plaintiffs exercised reasonable care in their operation of the rented vehicle, they could not under California law be held liable to defendants for any amount of damage or consequent loss.

"(iv) The manner in which the Rental Contracts were printed, worded, packaged and presented disguised the existence of a major portion of the contractual provisions and caused these provisions to be difficult or impossible to read. The reverse sides of the . . . Contracts contained a full page of 'fine print' provisions. These reverse sides were difficult or impossible to read because the . . . Contracts were bound together with numerous pages of carbon paper and copies of the . . . Contracts. Furthermore, the existence of these reverse sides was in no way conspicuously referenced on the front page of the Insurance Contract.

"(v) Defendants, and each of them, were in a superior bargaining position in relation to plaintiffs under which said defendants dictated the terms of the contract which were not sub-

grounds that the doctrine of unconscionability is only a defense to the enforcement of contract provisions and not a ground for affirmative relief.

In 1970, the state Legislature enacted the "Consumers Legal Remedies Act," Civil Code section 1750, et seq. Civil Code section 1770 provides: "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . . [¶] (s) Inserting an unconscionable provision in the contract." Thereafter, Civil Code section 1780, subdivision (a) states: "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain any of the following: [¶] (1) Actual damages, but in no case shall the total award of damages in a class action be less than three hundred dollars ($300). [¶] (2) An order enjoining such methods, acts, or practices. [¶] (3) Punitive Damages. [¶] (4) Any other relief which the court deems proper."

■ Contrary to defendants' assertion that unconscionability serves only as a defense to the enforcement of a contract or contract clause, it is readily perceived that the Legislature has provided a damage and injunctive remedy to consumers injured by unfair business practices arising from a contract provision deemed unlawful by reason of its unconscionable nature.

In 1979, the Legislature enacted Civil Code section 1670.5.[12] It provides: "(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reason-

---

ject to alteration through negotiations. Said defendants had superior knowledge relative to the plaintiffs with regard to all matters relating to the [CDW], including the value of the [CDW], and have used such superior knowledge to obtain unfair advantage over the plaintiffs."

[12] In adopting the Uniform Commercial Code the California Legislature deleted section 2-302 of that code. The subsequently enacted Civil Code section 1670.5 contains the exact language of the Uniform Commercial Code section 2-302. (1 Witkin, Summary of Cal. Law (9th ed.) § 31, p. 66.) As was pointed out in *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal. App.3d 473, 485 [186 Cal.Rptr. 114, 38 A.L.R.4th 1], "The only significant difference is that section 1670.5 placed under the 'Unlawful Contracts' heading of division 3, part 2, title 4 of the Civil Code, applies to all contracts rather than being limited to those sales transactions governed by the Commercial Code."

able opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

The legislative comment which accompanies section 1670.5 is instructive. It informs us, inter alia, that "[t]his section is intended to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability. The basic test is whether, in the light of the general background and the needs of the particular case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subdivision (b) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise [citation] and not of disturbance of allocation of risks because of superior bargaining power. . . ."

The question remains as to whether the allegations contained in the fifth cause of action can survive a general demurrer. It has been observed that unconscionability " '. . . is an amorphous concept obviously designed to establish a broad business ethic. . . .' [¶] The concept of unconscionability was meant to counteract two generic forms of abuses, the coincidence of both forms being necessary to a finding of the concepts applicability. [¶] The first type of abuse relates to procedural deficiencies in the contract formation process, taking the form either of deception or a refusal to bargain over contract terms. [¶] The second type of abuse involves the substantive contract terms themselves and may be analyzed according to four specific subcategories of abuses including: . . . 4. [¶] Unexpectedly harsh terms manifested in the form of price disparity." (15 Williston on Contracts (3d ed. 1972) § 1763A, pp. 213-215, fn. omitted.)

Justice Weiner, addressing the concept of unconscionability in *A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d 473, 486 wrote: "Nevertheless "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' [Citation.] Phrased another way, unconscionability has both a 'procedural' and a 'substantive' element. [Citations.]

"The procedural element focuses on two factors: 'oppression' and 'surprise.' [Citations.] 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. [Citations.] Charac-

teristically, the form contract is drafted by the party with the superior bargaining position. [Citation.]"

The five reasons pleaded by plaintiff as forming the basis for a judicial determination that the CDW provision is unconscionable, are directed to both the substantive and procedural aspects of the concept. We will examine each separately.

First, the substantive allegation that the CDW provision provides ". . . no benefit, protection or insurance coverage under most circumstances, which fact was concealed by defendants . . ." is, in our judgment, insufficient as a matter of law to provide a basis for substantive unconscionability. To the extent that the allegation is predicated on the incorporated third cause of action, we have already determined that plaintiff's reliance on Civil Code section 1955 is misplaced and no cause of action is asserted therein. It is possible, though we would hope unlikely, that the allegation is more sweeping in scope and that plaintiff is really asserting that because the contingency protected against, i.e., collision damage, usually does not occur, then the lack of benefit under most circumstances results in unconscionability. If this is the intent of the allegation then we likewise determine it insufficient as a matter of law to establish unconscionability. We feel no need to elaborate on the preposterous and chaotic consequence which would result from a contrary holding other than to observe that every contractual provision involving an assumption of risk predicated upon a contingent future event would be subject to the charge of unconscionability.

The second allegation is also substantive in nature and embodies two elements. The first element alleges an excessive price within the meaning of the California Insurance Code. The allegations of the incorporated second cause of action refer specifically to section 1852 of the Insurance Code which sets forth standards in making and using rates pertaining to all classes of insurance. As we have previously determined the CDW provision not to be insurance for purposes of statutory regulation, the insurance code is irrelevant in measuring the alleged excessiveness of cost of the CDW agreement. Thus, no unconscionability can be predicated on that basis.

The second element however charges that the price for the CDW is "far in excess of a price that would be determined in a competitive business environment." The incorporated first and second causes of action sets forth additional factual allegations: that plaintiff paid $6 per day for a waiver for collision or upset damage or loss up to $1,000; that on an annualized basis the rates charged are more than double the amount of "insurance" provided and are unreasonably high; that no competition exists with respect to the "insurance" provided by each defendant since each is the sole supplier of

the CDW for its own rentals. In this proceeding we, of course, assume the allegations of the complaint to be true. (*Katona* v. *County of Los Angeles* (1985) 172 Cal.App.3d 53, 56 [218 Cal.Rptr. 19]; *Collier* v. *City of Pasadena* (1983) 142 Cal.App.3d 917, 920, fn. 1 [191 Cal.Rptr. 681].)

In our judgment these allegations are sufficient to raise a colorable claim of substantive unconscionability and thus are able to survive a general demurrer. As we have previously observed, substantive unconscionability may be demonstrated by contract terms which are "unreasonably favorable to the other party" or "[u]nexpectedly harsh terms manifested in the form of price disparity." It cannot be said as a matter of law that the pleaded facts do not at least raise the issue and thus require a further evidentiary hearing by the court to ultimately determine whether substantive unconscionability existed at the time the contract was made.

The third reason is also directed to substantive unconscionability and is without merit. Its thrust is directed to misrepresentations by the defendants and we have previously determined that no such misrepresentations were made within the context of the pleading.

The fourth and fifth reasons are directed to the procedural aspects of unconscionability which must be found to coexist with the substantive aspect if the cause of action is to survive. We need look only to the fifth reason and the contract attached to the complaint to conclude that plaintiff has met her burden. The contract itself is one of adhesion and the plaintiff has alleged the defendants' superior bargaining position and the nonnegotiable nature of the contract terms. As we have previously noted it is this "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" which will permit affirmative relief based on the concept of unconscionability. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 486.)

Thus we determine the trial court committed error in sustaining without leave to amend the general demurrer to plaintiff's fifth cause of action. We take pains to point out that nothing we have said is to be construed as suggesting the CDW provision is in fact unconscionable. We hold merely that sufficient facts have been pled to survive the general demurrer. A determination on the merits of the unconscionability allegation will be made by the trial court after hearing evidence pursuant to Civil Code section 1670.5, subdivision (b).

Finally we turn to plaintiff's sixth cause of action based upon violations by defendants of section 16720 of the Business and Professions Code. Plaintiff specifically alleges: "Defendants combined, conspired and

agreed together to fix and maintain prices, terms and conditions for the rental of automobiles in California and to engage in other practices for the purpose of reducing and eliminating competition in the rental of automobiles to plaintiffs and other purchasers thereof. [¶] As a direct consequence of said acts of defendants, and each of them, price competition in the rental of automobiles in California has been restrained, suppressed and eliminated; cost of automobile rental has been raised, fixed, and maintained at high or artificial levels; and plaintiffs and other renters of automobiles have been compelled to pay artificially high prices therefore." Defendants successfully argued to the trial court that the conclusionary allegations were insufficient to state a cause of action for violation of the Cartwright Act. We agree.

■ California's Cartwright Act is patterned after the federal Sherman Anti-Trust Act (15 U.S.C. § 1 et seq.) and decisions under the latter act are applicable as an aid to a decision in interpreting the former. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953]; *G.H.I.I.* v. *MTS, Inc.* (1983) 147 Cal.App.3d 256, 265 [195 Cal.Rptr. 211, 41 A.L.R.4th 653].) ■ Thus, in *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481], our high court, drawing on federal and state precedent, summarized the requirements for bringing an action for violation of the Cartwright Act: "To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. General allegations of agreement have been held sufficient, and the conspiracy averment has even been held unnecessary, providing the unlawful acts or civil wrongs are otherwise sufficiently alleged. Significantly, however, the activities condemned by the anti-trust law are contracts, combinations, or conspiracies in restraint of . . . trade or commerce. Such contracts, combinations or conspiracies in restraint of . . . trade or commerce cannot be alleged generally in the words of the statute but the facts must be set forth which indicate the existence of such contracts, combinations or conspiracies. [General allegations of a conspiracy, without a statement of the facts constituting the conspiracy, its object and accomplishment in the restraint of trade in civil actions are held by the federal courts to be but allegations of legal conclusions, insufficient to constitute a cause of action under the federal statutes.]" (*Id.* at pp. 316-317, quotations and citations omitted.)

■ Plaintiff cites *Saxer* v. *Philip Morris, Inc.* (1975) 54 Cal.App.3d 7, 20 [126 Cal.Rptr. 327], for the proposition that general allegations of conspiracy are sufficient if the unlawful acts are pleaded with particularity. However, the complaint in *Saxer* was replete with facts which explained how the conspiracy operated and its effect on trade. In contrast, plaintiff's

complaint is devoid of any facts supporting claims of a conspiracy. Plaintiff failed to comply with *Chicago Title*'s mandate that plaintiffs allege "specific overt acts in furtherance [of the conspiracy]." (*Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra,* 69 Cal.2d at p. 318.) Thus, it was proper for the trial court to sustain defendants' demurrer to plaintiff's sixth cause of action.

The judgment is reversed and the case remanded for further proceedings on the fifth cause of action.

The parties are to bear their own costs on appeal.

Kline, P. J., and Smith, J., concurred.

Petitions for a rehearing were denied August 19, 1987, and respondents' petition for review by the Supreme Court was denied October 15, 1987.