[No. D013976. Fourth Dist., Div. One. Mar. 31, 1993.]

HERTZ CORPORATION et al., Plaintiffs and Respondents, v.
HOME INSURANCE COMPANY et al., Defendants and Appellants.

## COUNSEL

Haight, Brown & Bonesteel, David L. Jones and Thomas N. Charchut for Defendants and Appellants.

Jennings, Engstrand & Henrikson, Cozen & O'Connor and Kevin D. Bush for Plaintiffs and Respondents.

## OPINION

**FROEHLICH, J.**—The Home Insurance Company and H. L. Yoh Company (appellants) appeal from a judgment entered in favor of the Hertz Corporation and Fireman's Fund Insurance Companies (respondents) in a declaratory

relief action. The parties had disputed the question of who was obligated to fund the settlement entered into with two third party victims injured in an accident involving a person covered by various policies of insurance. The trial court ruled in favor of respondents, because the insuring agreements issued by respondents contained an exclusion purporting to bar coverage for the accident. This appeal followed.

I

GENESIS OF THE DISPUTE

A.  *Facts*

In early 1988 appellant H. L. Yoh Company (H. L. Yoh) sent an employee, Lawrence McIntyre (McIntyre), to work in various locations in San Diego. McIntyre worked in the San Diego area from January through May, during which time he rented several vehicles from appellant Hertz Corporation (Hertz), including the one involved in the subject accident. When he rented Hertz cars, McIntyre signed the Hertz rental agreement and elected to purchase the "liability insurance supplement" coverage (the LIS/excess policy). The dispute here revolves around this policy.

On May 1, McIntyre, while driving a Hertz car, rear-ended a car, injuring its two occupants. Prior to the accident McIntyre had been drinking, and he subsequently pleaded guilty to driving under the influence of alcohol.

The injured parties filed suits against McIntyre, H. L. Yoh and Hertz. Respondents subsequently filed a separate complaint seeking a declaration that they were not obligated to provide any LIS/excess coverage to McIntyre for the subject accident because McIntyre had violated a contractual clause against driving the vehicle while under the influence of alcohol.

The parties ultimately settled the injury lawsuits using contributions from both respondents and appellants. By stipulation the parties preserved their rights to seek reimbursement from each other in the declaratory relief action. The declaratory relief complaint was then amended to reflect the settlement, and also to reflect respondents' claim that they were entitled to reimbursement for all amounts they paid above $50,000, i.e., the amounts they paid under the LIS/excess policy.[1]

---

[1]Respondents only claimed the right to reimbursement for amounts paid in excess of the "primary policy" issued by Hertz which had $25,000/$50,000 indemnity limits.

### B. *The Insuring Agreements*

The agreements in question are (1) the Hertz rental agreement and (2) the LIS/excess policy issued by Fireman's Fund (Fireman's). We detail the relevant portions of each of these insuring agreements:

#### 1. *The Hertz Agreement*

The Hertz rental agreement contained a provision indemnifying McIntyre from liability to third persons resulting from an accident which occurred while the rented vehicle was in use. The limits of protection were $25,000 per person/$50,000 per accident.

In addition, the second page of the rental agreement contained a section, highlighted both by its format (placed in a separate box) and by its typeface (all capital letters), which described the prohibited uses of the rented vehicle. Paragraph 5 stated:

"5. PROHIBITED USE OF THE CAR. THE CAR MAY NOT BE USED: BY ANYONE UNDER THE INFLUENCE OF ALCOHOL OR OTHER INTOXICANTS, SUCH AS DRUGS; . . . IF THE CAR IS OBTAINED OR USED IN VIOLATION OF THIS AGREEMENT . . . LDW, PAI, AND PEC AND ALL LIABILITY PROTECTION, *INCLUDING LIS*, ARE VOID AND YOU MAY BE RESPONSIBLE FOR ALL LOSS OR DAMAGE TO OR CONNECTED WITH THE CAR, REGARDLESS OF CAUSE." (Italics added.) This second page of the rental agreement, containing the "driving under the influence" exclusion, was also posted at the rental counter for review by customers.[2]

#### 2. *The LIS/Excess Policy*

The LIS/excess policy issued by Fireman's clearly specified it was to serve as an excess policy over the Hertz policy, i.e., it only provided coverage in excess of the protections provided by the "primary policy," which it defined in its "Schedule of Primary Insurance" to be the Hertz rental agreement.

The LIS/excess policy then incorporated by reference the limitations on coverage imposed by the Hertz rental agreement. Specifically, the policy stated:

---

[2]One of the claims raised by appellants below and reasserted on appeal is that the exclusionary clause of paragraph 5 is unenforceable because McIntyre in fact did not read it and was unaware of it, and hence they argue it should be unenforceable for not being sufficiently conspicuous. However, McIntyre represented (by signing the rental agreement) that he had read and understood "all terms and conditions on both sides of this page." Moreover, when a policy contains sufficiently clear language, it matters not that the insured in fact failed to read it. (*National Auto. & Casualty Ins. Co.* v. *Stewart* (1990) 223 Cal.App.3d 452, 458-460 [272 Cal.Rptr. 625].) We therefore dismiss this claim of appellants.

"The insurance afforded by Coverage A [i.e., the excess liability coverage] is *subject to the same definitions, terms, conditions and exclusions as are contained in the Primary Policy . . . .*" (Italics added.)

### C. The LIS Summary

When McIntyre elected to purchase the LIS/excess coverage, he initialed a box on the rental agreement signifying he desired such coverage. Next to his initials within the LIS box was the statement: "You acknowledge reading SUMMARY of coverage." That summary was in a "question and answer" format. One of the questions, formatted in boldface type, asked, "**Are there any exclusions under LIS? Yes.**" The first of the six nonexclusive categories listed as examples of exclusions was "[i]f the customer . . . uses or permits the Rental Vehicle to be used in violation of the terms of the Rental Agreement."

### D. The Trial Court Judgment

Respondents moved for summary judgment, contending there was no triable issue of fact and that as a matter of law McIntyre was precluded from coverage under the LIS/excess policy because the accident occurred while he was drunk, thereby triggering the "driving under the influence" exclusion. Appellants opposed the motion, arguing the Fireman's policy was by its own terms a primary policy, and under Insurance Code section 11580.1 an exclusion for "driving under the influence" would not be valid in a primary policy.[3] Appellants also argued that even assuming such an exclusion was valid, it was intrinsically vague and insufficiently incorporated into the LIS/excess policy.

Appellants cross-moved for summary judgment, raising essentially the same contentions and claiming they were therefore entitled to have Fireman's act as the first-layer insurer for the accident. In response, Fireman's argued the LIS/excess policy was excess to the liability limits of the Hertz rental agreement and therefore not subject to Insurance Code section 11580.1's limitations on permissible exclusions. Fireman's argued that it

---

[3]Appellants' argument below relied on an endorsement in the LIS/excess policy which described its coverage as primary to any other policies available to McIntyre. On appeal, however, appellants state in their reply brief that "no one disputes the fact that the Fireman's Fund LIS policy is an excess policy." Appellants have apparently recognized that the "other insurance" clauses in the LIS/excess policy and the Home policy do not convert the LIS/excess policy into a primary policy, but only adjust priorities *among* excess policies. These "other insurance" clauses only become relevant if we first decide that the exclusion is invalid, because "other insurance" clauses are irrelevant if one of the policies does not apply to the loss. (*Pines of La Jolla Homeowners Assn.* v. *Industrial Indemnity* (1992) 5 Cal.App.4th 714, 723-725 [7 Cal.Rptr.2d 53].)

therefore could exclude, and did exclude with sufficient clarity, accidents caused by drunk drivers.

The trial court granted respondents' motion and denied appellants' cross-motion. Appellants unsuccessfully moved for reconsideration, and judgment in respondents' favor was entered. This appeal followed.

### E. *Summary of Issues*

Several issues are disputed by the parties. Importantly, however, it is not disputed that Insurance Code[4] section 11580.1, upon which this appeal turns, permits an excess insurer to have exclusions broader than allowed by section 11580.1 so long as the "underlying insurance" requirement of that statute is satisfied. The key issues are: (1) Is the Hertz rental agreement a primary insurance policy? (2) Does the presence of the exclusion in the Hertz rental agreement mean there is no "available" underlying insurance, thereby causing the LIS/excess policy to be the only (and hence primary) policy available to McIntyre? (3) Is the exclusion clear enough and sufficiently incorporated into the LIS/excess policy to be enforceable?

## II

### ANALYSIS

### A. *The Hertz Rental Agreement Is the Primary Policy, and the Purported Exclusion Is Invalid as to That Level of Coverage*

■ The first set of issues requires little discussion. The terms of the Hertz rental agreement provide that Hertz would indemnify and hold McIntyre harmless from liabilities to third parties. Ordinarily, where there is a risk of loss to which one party is subject based on contingent or future events and a contract which shifts that risk to another, together with a distribution of the risks among similarly situated persons, the contract is one of insurance. (*Metropolitan Life Ins. Co.* v. *State Bd. of Equalization* (1982) 32 Cal.3d 649, 654 [186 Cal.Rptr. 578, 652 P.2d 426].)[5]

All of those elements are present here. Indeed, the terms of Hertz's agreement suggest Hertz understood the agreement served as insurance,

---

[4] All statutory references are to the Insurance Code unless otherwise specified.

[5] Although *Truta* v. *Avis Rent A Car System, Inc.* (1987) 193 Cal.App.3d 802 [238 Cal.Rptr. 806] held that a rental agency's "collision damage waiver" agreement was not an insurance agreement, the *Truta* court noted that an opinion by the Department of Insurance (to which the *Truta* court gave great deference) would have concluded an arrangement similar to our case (i.e., an agreement to indemnify as to third parties) would "clearly be insurance." (*Id.* at pp. 814-815.)

because its contract referred to its own coverage as "primary" to other insurance protections available to the lessee.

Since the Hertz rental agreement provided primary coverage, the purported exclusion for driving while intoxicated is unenforceable, under section 11580.1, as to the Hertz layer of coverage. Section 11580.1 has repeatedly been interpreted to contain the exhaustive list of exclusions permissible in an automobile policy. (See, e.g., *California State Auto. Assn. Inter-Ins. Bureau* v. *Gong* (1984) 162 Cal.App.3d 518, 528 [208 Cal.Rptr. 649] ["Any exclusion not expressly authorized by section 11580.1 is . . . impermissible and invalid"]; *Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270, 281 [121 Cal.Rptr. 694] ["[I]t was the legislative intent that exclusions not therein listed are impermissible"].) We have examined the provisions of section 11580.1 and found nothing which would permit an insurer under a primary automobile insurance policy to exclude accidents caused by an intoxicated driver.[6] Accordingly, to the extent the exclusion purported to exclude coverage under Hertz's primary insuring agreement it would be void.

B. *Because There Was Valid Collectible Underlying Insurance,
Fireman's Excess Insurance Policy Is Not Precluded From Adopting
Exclusions Beyond Those Authorized by Section 11580.1*

The parties agree that an "excess policy" is not bound by the limitations on permissible exclusions if the excess policy contains a requirement for "underlying insurance" or a retained limit of self-insurance equal to or greater than the limits specified in Vehicle Code section 16056. (§ 11580.1, subd. (a).) It is also not disputed that the LIS/excess policy specifies it is an excess policy over the amounts collectible under the Hertz rental agreement.

■ Appellants claim, however, that the Hertz rental agreement fails to satisfy the "underlying insurance" requirement, and hence the LIS/excess policy cannot rely upon the Hertz insuring agreement to satisfy the requirements of section 11580.1. ■ When an "excess" policy specifies that

---

[6]We cannot accept respondents' argument that the exclusion would be valid as to Hertz's primary coverage. Respondents urge that section 11580.1, subdivision (b)(3), which allows an insurer to explicitly describe the "purposes for which coverage for such motor vehicles is specifically excluded," permits an exclusion for intoxicated drivers. However, we are cited no case interpreting subdivison (b)(3)'s "use exclusion" as permitting the exclusion *based on the condition of the driver.* In an analogous context, the courts have rejected arguments that the subdivision (b)(3) use exclusion authorizes the exclusion of accidents which occur while a vehicle is rented to others, reasoning this language (while superficially a "use" limitation) was effectively an effort to exclude a class of users based on the driver's status, in violation of the purposes of section 11580.1. (See *Lovy* v. *State Farm Insurance Co.* (1981) 117 Cal.App.3d 834, 847-849 [173 Cal.Rptr. 307].)

primary insurance be maintained and identifies which policy is the primary policy, the court must examine such "primary" policy to determine whether it qualifies as "underlying insurance" within the strictures of section 11580.1. (*Harbor Ins. Co.* v. *KSCH, Inc.* (1989) 208 Cal.App.3d 965, 968-969 [256 Cal.Rptr. 499].) ▇▇▇ Here, condition J of the LIS/excess policy requires that the "Primary Policies" (defined by the declarations to be the Hertz rental agreements) be maintained for the duration of the LIS/excess policy. Since we have both a requirement of "underlying insurance" and an identification of the required "primary policy," we must determine if the Hertz rental agreement qualifies as "underlying insurance."

The Hertz rental agreement certainly satisfies the "limits of coverage" requirement, because its $25,000/$50,000 limits exceed those imposed by Vehicle Code section 16056.[7] The only real challenge appellants raise is that the Hertz rental agreement, by attempting to exclude "driving under the influence" from coverage, fails to qualify as underlying insurance for this accident. However, as discussed previously, that exclusion is invalid relative to the Hertz rental agreement.[8] In *Harbor Ins. Co.* v. *KSCH, Inc., supra,* the "underlying policy" also contained an "exclusion" which purported to exclude coverage if the driver had or was required to have his own insurance. (208 Cal.App.3d at p. 969.) This exclusion did not trouble the *Harbor* court, nor did its presence forfeit the primary policy's status of "underlying policy" for purposes of assessing whether the excess policy could validly exclude certain permissive users, because the exclusion was never operable in that case. (*Id.* at p. 971.) Similarly, the "driving under the influence" exclusion here does not cause the Hertz rental agreement to lose its status as underlying insurance, because the benefits were paid and (for the reasons discussed

---

[7]Appellants argue the LIS/excess policy is defective, despite its specific reference to the Hertz rental agreement as the underlying policy, because the LIS/excess policy does not recite any numerical minimums of coverage required to be maintained. We may properly deem this argument waived because it was not raised below (*Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99]), nor was it raised on appeal until appellants' reply brief. (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) Moreover, even were we to consider this argument, we note condition J of the LIS/excess policy requires the primary policy be maintained at not less than the same levels that existed at the inception of the LIS/excess policy; it refers to the Hertz rental agreement as the primary policy; and both the Hertz rental agreement (containing the appropriate limits) and the LIS/excess policy bear dates of January 1988, permitting the conclusion the LIS/excess policy incorporated a document containing appropriate limits.

[8]Although we uphold the enforceability of the exclusion here, we stress our conclusion is limited solely to its enforcement as an exclusion to the excess policy, and our opinion should not be construed as approving the practice of including such an exclusion in a primary policy. To the contrary, we believe it is inappropriate for a primary policy to contain such language (even though such a clause would be unenforceable) because we apprehend the in terrorem effect of the mere presence of such a clause could work mischief by inhibiting claimants, untutored in the law, from pressing their legitimate claims.

above) the exclusion could never operate insofar as the Hertz rental agreement provided coverage.

Appellants rely on *National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126 [125 Cal.Rptr. 513] for their argument that the Hertz rental agreement is not "underlying insurance." *Manley*, however, is simply inapposite. In *Manley*, the policy, issued to a trailer rental agency, contained (1) a warranty that the agency would not rent trailers except to insured lessees and (2) a clause specifying the policy would be "excess" over other available insurance. (*Id.* at p. 129.) The *Manley* court held that neither clause sufficed as an "underlying insurance requirement," because even if a lessee had his own policy of insurance, such policy would by statute be presumed not to be primary insurance.[9] *Manley* simply has no application here, because the LIS/excess policy does have an "underlying insurance requirement": a policy (i.e., the Hertz rental agreement) the primacy of which is unaffected by statutory presumptions.[10]

In short, the LIS/excess policy complied with the relevant statutory requirements and was therefore entitled to incorporate broader exclusions than are permitted by section 11580.1.

C. *The Exclusion Is Sufficiently Unambiguous and Its Incorporation Into the LIS/Excess Policy Sufficiently Clear to Permit Enforcement*

Because Fireman's is an excess insurer who *may* place a "driving under the influence" exclusion in its policy, we now must evaluate whether the clause here in fact was sufficient to be enforceable. ■ The standards for determining enforceability of an exclusion—applicable with equal force to automobile liability policies (see *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 194 [130 Cal.Rptr. 520, 550 P.2d 1056])—are not disputed. Exclusions in insurance policies must be both

---

[9]When two automobile liability policies are applicable, the terms of sections 11580.8 and 11580.9 determine which is primary and which is excess. Section 11580.9, subdivision (d) conclusively presumes the primary policy is the one in which the accident vehicle (i.e., the rented trailer) is described as an owned vehicle. Thus, the lessor's policy would be conclusively presumed primary over the lessee's policy.

[10]Appellants' reliance on *Alderson* v. *Insurance Co. of North America* (1990) 223 Cal.App.3d 397 [273 Cal.Rptr. 7] is also misplaced. In *Alderson*, the insurer's policy covered a car rental agency but excluded coverage for permissive users. The insurer argued that because the rental agency was a "self-insurer," the exclusion was valid. The court rejected the argument, both because section 11580.1 mandates that the excess policy expressly require either underlying insurance or self-insurance (the *Alderson* policy did not (223 Cal.App.3d at pp. 405, 411)) and because there was no evidence the rental agency was in fact "self-insured." (*Id.* at pp. 407-410.) Neither consideration applies here: the LIS/excess policy does require that an "underlying policy" be maintained (providing vehicle renters with $25,000/$50,000 liability coverage); and there is a primary policy applicable to McIntyre's liability.

conspicuous (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 577-578 [218 Cal.Rptr. 407]) and phrased in clear language (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 752 [161 Cal.Rptr. 322]). Any ambiguity in the language must be interpreted in favor of the insured. Absent an ambiguity, however, a court may not rewrite a policy to include a risk not contemplated by the policy. (*Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1109 [234 Cal.Rptr. 853].)

 The language in the Hertz rental agreement, understood in its ordinary sense by a person of average intelligence (*Miller* v. *Elite Ins. Co.*, *supra*, 100 Cal.App.3d 739), is plain and unambiguous.[11] The reader is advised that driving under the influence violates the contract. The reader is then specifically advised that if the car is used in violation of the agreement, ". . . ALL LIABILITY PROTECTION, INCLUDING LIS, [Is] VOID AND YOU MAY BE RESPONSIBLE FOR ALL LOSS OR DAMAGE TO OR CONNECTED WITH THE CAR. . . ." Thus, both the prohibited act and the negative consequences on the LIS coverage are set forth in unmistakable language.

The exclusionary clause is also conspicuous. Found on the second page of a two-page agreement, it does not suffer from the problems courts have criticized, such as being hidden in fine print, placed in a "dense pack" format, or unlabeled. (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.*, *supra*, 172 Cal.App.3d at pp. 577-578.) Instead, the agreement is formatted in two columns of readable typeface, and the relevant clause is further made conspicuous by its placement in a separate box, with all capital letters being used in the text. Moreover, the customer is provided a LIS summary—a readable one-page document explaining the LIS policy and stating in plain language there are exclusions to LIS coverage, the first of which is using the vehicle in violation of the terms of the rental agreement.

The LIS/excess policy clearly incorporates by reference both the Hertz rental agreement and the LIS summary brochure. The LIS/excess policy, in describing its coverage section, states that it is subject to the same "terms, conditions and exclusions" contained in the Hertz rental agreement. The

---

[11]At oral argument appellant pointed out that the provisions of paragraph 5, labeled "PROHIBITED USE OF THE CAR," included the following language: "THE CAR MAY NOT BE USED: BY ANYONE UNDER THE INFLUENCE OF ALCOHOL OR OTHER INTOXICANTS, SUCH AS DRUGS; FOR ANY ILLEGAL PURPOSE, SUCH AS ILLEGAL TRANSPORTATION OF PERSONS, DRUGS, OR CONTRABAND; . . ." etc. Appellant, ignoring the colon after the word "used" and the semicolon after the word "drugs," argued paragraph 5 should be read only as applying to intoxicated persons who use the car for illegal purposes such as smuggling. Since McIntyre (although intoxicated) was not engaged in smuggling, appellant claims paragraph 5 did not apply to his activities. We cannot accept this argument, because it would require that we ignore punctuation which separates the clauses into distinct, rather than conjunctive, prohibited uses.

policy amply incorporates the "driving under the influence" clause contained in the Hertz rental agreement.

## DISPOSITION

The judgment is affirmed.

Todd, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied April 21, 1993.