Filed 7/24/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ASHISH ADHAV et al., | B285586 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC485275) |
| v. | |
| MIDWAY RENT A CAR, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu Berle, Judge.  Affirmed.

Kearney Littlefield, Thomas A. Kearney, Prescott W. Littlefield; Catherine Burke Schmidt; Ringler Law Corporation, Jerome L. Ringler; Esner, Chang & Boyer, Stuart B. Esner and Shea S. Murphy, for Plaintiffs and Appellants.

Molino & Berardino, Steven R. Berardino and Michelle Cooper, for Defendant and Respondent Midway Rent A Car, Inc.

Michelman & Robinson, Mona Z. Hanna and Jennifer A. Mauri, for Defendants and Respondents National Specialty Insurance Company, KnightBrook Insurance Company and Knight Management Services, LLC.

## I.  INTRODUCTION

Plaintiffs Ashish Adhav and Cullen Dickson rented cars from defendant Midway Rent A Car, Inc. (Midway) and opted to purchase insurance coverage in connection with those rentals.  Because Midway is not an insurance company, Midway purchased master insurance policies from defendants KnightBrook Insurance Company (KnightBrook) and National Specialty Insurance Company (National Specialty) to make such optional insurance coverage available to its customers.  Midway was the insured but was authorized to extend coverage to its customers under the policies.  These policies, and the rates they charged Midway, were approved by the California Department of Insurance (DOI) as required by California law.  Many of the policies were structured to include a $25,000 per claim self-insured retention (essentially, a deductible) for which Midway was responsible in case of a customer loss.  KnightBrook and National Specialty became liable only if the loss exceeded the self-insured retention.  Shifting some of the risk of loss to Midway in this manner lowered the premium Midway paid to the insurers.  In light of the self-insured retention, administrative costs in connection with adjusting claims (for which it was responsible), and other factors including presumably some profit margin, Midway charged customers purchasing optional insurance more than the premium it paid to KnightBrook and National Specialty.

Plaintiffs chose to rent cars from Midway based on convenience, location, and overall cost—not based on anything insurance related.  Plaintiffs understood they were not obligated to purchase insurance from Midway.  The insurance rates Midway charged customers were set forth in the rental agreement and known to Plaintiffs before they opted to purchase the coverage.  The insurance rates paid by Plaintiffs were comparable to rates charged

by other rental car companies, and in some instances lower. Plaintiffs received the benefit of the coverage they purchased, did not experience any covered losses, and there is no dispute concerning any adjustment of a claimed loss.

Plaintiffs nevertheless brought a class action against Midway, asserting they were economically harmed by unlawful and fraudulent business practices. (Bus. & Prof. Code, § 17200, et seq.) Plaintiffs also named as defendants KnightBrook, National Specialty and their managing general agent Knight Management Insurance Services (KMIS) (collectively, the Insurer Defendants). How did the Defendants injure Plaintiffs, one might ask. Plaintiffs assert various Insurance Code provisions required Midway to disclose to them what rate Midway was paying the Insurer Defendants, and further to charge Plaintiffs that same rate (despite this meaning Midway would offer insurance at a loss given the self-insured retention).[1] Plaintiffs contend the Insurer Defendants were liable because, although they never received anything beyond the premium owed by Midway, the Insurance Code required funds collected by Midway from customers purchasing insurance be imputed to the Insurer Defendants. Plaintiffs argue the result of this imputation was that the Insurer Defendants constructively "received" a premium in excess of that authorized by the DOI.

Plaintiffs claimed these business practices caused them harm because they paid more than what Midway paid its insurers, despite the fact they received the benefit of coverage based not only on the premium paid to the Insurer Defendants, but also on Midway's self-insured retention. Plaintiffs further sought an

---

[1] All statutory references are to the Insurance Code, unless otherwise specified.

3

injunction to prohibit these alleged unlawful and fraudulent practices.

The trial court disagreed with Plaintiffs' arguments, finding their claims were based on Insurance Code provisions inapplicable to Plaintiffs' interactions with Midway.  The court further found Plaintiffs failed to establish any illegal or fraudulent business practice, or any economic injury.  Following a bench trial, it entered judgment in favor of the Defendants.  We affirm.

## II.   FACTUAL AND STATUTORY BACKGROUND

### A.     The Insurance Arrangements

Midway is a car rental agency in the business of renting cars to customers.  Midway offers insurance to its rental car customers as an optional feature of its rental agreements.  Available coverages include Renters Liability Protection Insurance (RLP), Supplemental Liability Insurance (SLI), and Personal Accident Insurance-Personal Effects Coverage (PAC).  RLP provides liability insurance coverage at the state-required policy limits for motor vehicle drivers of $15,000 per person/$30,000 per accident for bodily injury, and $5,000 in property damage per accident.  (§ 11580.1, subd. (b); Veh. Code, § 16056.)   SLI provides liability insurance in excess of any existing insurance, from the state statutory minimum limits up to $1,000,000.  PAC provides coverage for death or injury in the event of an accident involving the rented vehicle, and loss or damage of a rental car customer's personal belongings.

### 1.     *RLP and SLI Coverage*

KnightBrook and National Specialty are admitted insurance carriers in California.  KMIS is their managing general agent. From May 25, 2008 through January 31, 2012, Midway purchased master RLP and SLI insurance policies from National Specialty

4

under which Midway was the insured.  Endorsements on these policies, as well as later policies purchased by Midway for RLP, SLI and PAC insurance, allowed Midway to offer coverage pursuant to the insurance policies to car rental customers who opted to purchase such coverage.

The sale of insurance products in California is heavily regulated, and insurers generally must submit proposed rate filings and receive approval from the DOI before offering an insurance product.  Plaintiffs acknowledge the Insurer Defendants complied with these requirements.  The Insurer Defendants' DOI filings for the insurance policies at issue indicated the rates in those policies applied to the named insured (the rental car company).  In 2011, after an inquiry by the DOI, a representative of the Insurer Defendants specifically confirmed "these are rates being charged the named insured—the car rental company" and not others.  As pertinent here, the DOI approved premium rates for RLP insurance offered by National Specialty at $1 per day (subject to a policyholder self-insured retention of $25,000), and $4.00 per day for SLI insurance, with up to a 25 percent adjustment in the rate charged.  Midway paid National Specialty $1.00 for each day a rental customer purchased RLP coverage and $4.38 for each day a customer purchased SLI coverage.  The significant self-insured retention lowered the rate the DOI approved, and Midway paid.

In 2012, when National Specialty was preparing a new regulatory filing, a representative of the vendor processing that filing sent an email to the DOI saying she had "a question regarding rental car insurance in California that I was hoping you could help me with.  If an insurance company were to file new program rates like any other product, but we believe that the rental company involved may charge additional money once the insurance coverage is offered to the renters, does that additional money need to be filed

as part of the filing and is it considered part of the premium?" The DOI responded that it "believe[d] this would be a separate transaction that is outside our review. If the additional money came back to the insurer in any way, either directly or indirectly, then we would expect to see it included in a rate filing.

From February 1, 2012 through February 23, 2013, Midway purchased master RLP and SLI insurance policies from KnightBrook. The premium rates approved by the DOI for these KnightBrook policies were $1 per day (subject to a self-insured retention of $25,000 per claim), and $12.94 per day for SLI coverage. KnightBrook charged these same premium amounts for each day a rental customer purchased RLP and/or SLI coverage under these policies.

### 2. PAC Coverage

From May 25, 2008, through February 23, 2013, Midway was listed as an insured under a PAC group policy issued by National Specialty to Arizona-based Sonoran National Insurance Group. Midway paid 99 cents for each day a rental customer purchased PAC coverage. This rate was not part of a rate filing with the DOI, but was set forth in a master policy that was "desk filed" with the Arizona Department of Insurance. The policy contained a base net rate ranging from $.99 to $1.13, and "gross/retail" rates ranging from $3.95 to $5.95.

### B. The Plaintiffs

Class representatives Ashish Adhav and Cullen Dickson rented cars from Midway between May 25, 2008 and February 23, 2013. Midway charged Adhav $12.95 per day for RLP coverage, $19.95 per day for SLI coverage, and $3.00 per day for PAC

coverage.  Midway charged Dickson $14.95 per day for RLP coverage.[2]

Adhav testified that had he not purchased the optional insurance from Midway, he would have purchased such insurance as part of a car rental from another rental car company at the same price.  Both class representatives testified they considered only the bottom line cost when pricing car rentals from competing rental car companies (as opposed to individual charges in the total price).  The rental agreements clearly set forth the amounts charged for coverage.  Neither class representative noticed any difference in the price of rental car insurance between Midway and other rental car companies.  Both Adhav and Dickson rented from Midway primarily based on factors such as convenience and location.  Evidence at trial showed the rates Midway charged its customers for optional insurance did not exceed the rates charged by other rental car companies.  Indeed, when Adhav bought PAC coverage from other rental car companies, he paid the same amount or more than what Midway charged.

### C.    The Relevant Statutory Regimes

To understand Plaintiffs' unfair competition law theory under Business and Professions Code section 17200 (the UCL), and Defendants' responses to it, some background on four separate statutory regimes implicated by the parties' respective arguments is required.

#### 1.    *Civil Code Section 1939.19(c)*

Civil Code section 1939.19, subdivision (c) provides in pertinent part that "[i]n addition to the rental rate, taxes,

---

[2]    Dickson did not provide any evidence suggesting he purchased SLI or PAC coverage.

additional mandatory charges, if any, and mileage charges, if any, a rental company may charge for an item or service provided in connection with a particular rental transaction if the renter could have avoided incurring the charge by choosing not to obtain or utilize the optional item or service. Items and services for which the rental company may impose an additional charge include, but are not limited to, optional insurance . . . requested by the renter . . . ."

This statute, codified as Civil Code section 1936 during the class period,[3] was enacted following *Truta v. Avis Rent A Car System, Inc.* (1987) 193 Cal.App.3d 802 (*Truta*). The *Truta* court concluded a collision-damage waiver (CDW) offered by a rental car company was not insurance, and therefore Insurance Code provisions were "irrelevant in measuring the alleged excessiveness" of the CDW's cost. (*Id*. at p. 820.) Passed in response to *Truta*, Civil Code section 1936 "was primarily designed to protect consumers against rental car company overcharges for collision damage waivers . . . and for the cost of repairing cars damaged during a rental." (*Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1154-1155 & fn 5.) It does so, among other ways, by capping the total amount of a renter's liability to the rental company resulting from damage to the rental vehicle (Civ. Code, § 1939.05), and specifying the terms of any damage waiver (*id*., § 1939.09). Sections 1939.01—1939.37 also "touch on a variety of other rental car practices," such as permitting a rental car company to "impose

---

[3]     Following its enactment, Civil Code section 1936 was amended numerous times, and, in 2016, "recast and reorganiz[ed]" under sections 1939.01-1939.37. (See 2016 Cal. Stats. ch. 183, (enacted August 26, 2016)). Regardless of the amendments, the statute has consistently provided a car rental company may impose an additional charge for optional insurance.

8

additional charges for optional services if the renter knows the charge is avoidable." (*Schnall v. Hertz Corp.*, *supra*, 78 Cal.App.4th at p. 1155.) Those additional permitted (so long as avoidable) charges include insurance. (Civ. Code, § 1939.19, subd. (c).) In contrast to some of its other provisions, which limit charges that can be imposed (e.g., *id.*, § 1939.05), the statute is silent regarding the amount of permissible insurance fees that can be charged in addition to the rental rate.

### 2. *Proposition 103*

Prior to Proposition 103, "California . . . regulate[d] the rates of most types of insurance 'to the end that they shall not be excessive, inadequate or unfairly discriminatory.'" (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1258.) "The Legislature emphasized . . . that this goal was to be achieved through open competition in the insurance market rather than by state regulation." (*Ibid.*) Proposition 103, a constitutional amendment, was approved by the electors on November 8, 1988 and took effect the following day. (*Travelers Indemnity Co. v. Gillespie* (1990) 50 Cal. 3d 82, 88; Cal. Const., art. II, § 10). Proposition 103 made fundamental changes to this open-market/competition approach. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 561.)

Like the law it replaced, Proposition 103 utilizes the basic standard that "[n]o rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter." (§ 1861.05, subd. (a).) But unlike prior law, Proposition 103 directs that "no consideration shall be given to the degree of competition" in determining whether a rate is excessive, inadequate or unfairly discriminatory. (*Ibid.*) Instead, Proposition 103 installed an elected Insurance Commissioner and

created a "prior approval" process whereby most insurance products (including the proposed rates to be charged for those products by the insurer) must be filed by the insurer with the DOI, and approved by the Commissioner, prior to sale. (§ 1861.01, subd. (c).)[4]

With regard to automobile insurance, Proposition 103 dictates that rates are to be determined primarily by a driver's safety record, years of driving experience, and annual number of miles driven. (§ 1861.02, subd. (a).) Insurers are required to offer good driver discount policies to persons with suitable driving records. (§§ 1861.02, subd. (b)(1), 1861.025.)

### 3. Agent Provisions

### a. General Purpose Agents

An insurance agent is a person "authorized, by and on behalf of an insurer, to transact all classes of insurance other than life, disability, or health insurance, on behalf of an admitted insurance company." (§ 31; see also § 1621.) Agents must hold a valid license from the Commissioner to conduct business. (§ 1631.) An insurance agent's primary obligation is to represent the insurer in the transaction of insurance business with the general public. (*Marsh & McLennan of Cal., Inc. v. City of Los Angeles* (1976) 62 Cal.App.3d 108, 117—118.) An insurance agent as defined by sections 31 and 1621 therefore may bind the insurer if acting within the scope of the insurance business entrusted to him or her. (*R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th

---

[4]     Section 1861.13 states that Proposition 103 "shall apply to all insurance on risks or on operations in this state, except those listed in Section 1851." Automobile insurance is not among the exempted types of insurance listed in section 1851.

327, 344 [" 'The most definitive characteristic of an insurance agent is his authority to bind his principal, the insurer.' "].)

Agents are typically compensated by the insurer based on products sold. (E.g., *Arnold v. Mutual of Omaha Ins. Co.* (2011) 202 Cal.App.4th 580, 584; § 1861.16, subd. (a).) Agents are responsible for delivering a copy of any motor vehicle policy they sell to the insured. (§ 383.5.) That policy must specify the premium. (§ 381, subd. (f).)

### b. *Rental Car Agents Act*

In 1999, the Legislature enacted the Rental Car Agents Act, which added sections 1758.8–1758.891 to the Insurance Code. (Stats. 1999, ch. 618.) The Act became effective January 1, 2001. (§ 1758.891.) Section 1758.8 provides that a car rental agency may either (1) offer or sell insurance under a general license issued to brokers and agents under Article 3, commencing with section 1631 [i.e., the agency provisions described above] or (2) obtain a more limited license that authorizes the car rental agent to sell certain types of insurance "incidental to rental agreements, on behalf of any insurer authorized to write those types of insurance in this state." (§ 1758.8.)[5] Section 1758.81 provides that a car rental agency may obtain the more limited, specific license by filing a certificate signed by an insurer which appoints the car rental agency to act as its

---

[5] These types of insurance are personal accident, liability, personal effects, roadside assistance, and emergency sickness. (§ 1758.85.) The Insurance Code elsewhere provides for other types of businesses to obtain similar limited licenses for selling insurance incidental to their business, such as travel agents, cargo shippers, self-storage unit operators, and others. (See §§ 1752—1758.994.)

11

agent and transact the permitted kinds of insurance. (§ 1758.81 (a)(2).)

The parties do not dispute that Midway was appointed by the Insurer Defendants, and held a proper rental car agency license, in connection with the sale of the RLP, SLI, and PAC products at issue.

## III. PROCEDURAL HISTORY

### A. Proceedings Before the Trial Court

On August 29, 2014, Plaintiffs filed a second amended class action complaint (SAC), the operative complaint in this action. On November 18, 2015, the trial court certified a class of "[a]ll consumers who paid for car rental insurance through Defendants in California at any time between May 25, 2008, and February 23, 2013, and who did not rent again from Midway after February 23, 2013."

Plaintiffs' first UCL cause of action alleged Midway's practice of charging its customers a fee for insurance coverage that exceeded the DOI approved rate in the policies between the Insurer Defendants and Midway violated Proposition 103's rate approval requirement (§ 1861.01), and consequently, constituted an unlawful business act or practice. Plaintiffs alleged the Insurer Defendants were liable because Midway was their agent, payments made by rental car customers were therefore imputed to the insurers as premium, and the Insurer Defendants thereby "received" premium in excess of the DOI authorized rate. Plaintiffs' second UCL cause of action alleged Defendants' failure to disclose to Plaintiffs the premium in the agreements between Midway and the Insurer Defendants was a fraudulent business act or practice.

12

The matter proceeded to a six-day bench trial. Before trial, the parties submitted a joint stipulation of facts, which the court accepted. Midway introduced evidence indicating it paid approximately $1.4 million in claims under its self-insured retention for RLP coverage during the class period. It also paid approximately half a million dollars in claims administration costs and sales incentives to employees related to the coverages it sold.

While the DOI was not a party and did not otherwise directly weigh in during trial, both parties presented testimony from former DOI officials. Plaintiffs called former Deputy Commissioner Steve Miller, who took the position that state law precluded rental car companies from charging any fees in excess of the DOI-approved rates. Mr. Miller further testified that, based on his inquiry and investigation, no other major car rental company was charging customers above the DOI-approved rate. Defendants called Phillip Pratt, the former Bureau Chief for the DOI's Rate Regulatory Division (the division responsible for review of rate filings). Mr. Pratt testified that, based on his experience in the rate regulation division, state law did not preclude rental car companies from charging a fee because they were the insured, not the insurer. Mr. Pratt further testified that Midway held a limited car rental agent license as provided by state law, and thus was not subject to the same fee restrictions that apply to general agents. Mr. Pratt acknowledged, however, he was aware of no other rental car agency that charges consumers more than the premium rates approved by the DOI.

At the conclusion of trial, the court invited the parties to submit proposed statements of decision; the court noted there were not many facts in dispute, and that the issues to be decided were legal as opposed to factual.

13

## B.    Statement of Decision

On September 27, 2017, the trial court issued its statement of decision.  The court found the Insurer Defendants complied with the DOI rate filing requirements for the master policies issued to Midway.[6]  Midway was authorized to sell rental car insurance coverage to customers through the commercial policies issued to it.  The Insurer Defendants collected from Midway only the amount of premium charged to Midway for each product.

The court found KnightBrook and National Security appointed Midway as a designated rental car agent, in a notice filed with the DOI pursuant to section 1758.81, subdivision (a)(2).  Midway was neither a "general insurance agent" nor an "employee of any insurance agent," nor a "broker."  Rather, Midway was licensed under the Rental Car Agents Act, a legislative scheme distinct from that applicable to general insurance agents and brokers under sections 1621 and 1631.  Midway was therefore not subject to the general agency provisions of the Insurance Code, but rather the more specific and limited provisions applicable to car rental agencies set forth in the Rental Car Agents Act.

The court found the rates charged by Midway were preset and did not vary based on factors such as the driver's safety record.  Midway did not know the driving record of potential renters, did not know how many miles a renter drove in a year, and therefore did not and could not underwrite policies or offer good driver discount to customers.  Nor could Midway modify coverage limits or terms, or

---

[6]    With regard to the policy "desk-filed" with Arizona for PAC coverage, the court held the law "does not require that an out-of-state policy, issued to an out-of-state insured, [be] filed or approved by the DOI."  Before us, Plaintiffs focus on the DOI-approved policies, and do not take issue with this finding.

refuse to offer coverage—it could chose only to whom it would or would not rent a car. When it sold someone insurance, Midway provided the disclosures required by the Rental Car Agents Act, specifically those set forth in section 1758.86, subdivision (b). Midway did not receive any compensation from the Insurer Defendants for selling car rental insurance.

Finding the rates approved by the DOI were for commercial policies issued to Midway, the court concluded the DOI-approved rates did not govern charges imposed by Midway on rental car customers. The court found Midway did not charge Plaintiffs insurance premiums in excess of the DOI authorized rate, and that the "amounts received by Midway for the sale of rental insurance are not imputed to any Defendant insurer because Midway was not acting with the powers of a general agent or with substantial oversight and control by any insurance carrier." The court further found the fees charged by Midway should not be imputed to the Insurer Defendants because Midway was the policyholder, and the insurance coverage it provided was ancillary to its primary business of renting vehicles. In addition, Midway operated under a $25,000 self-insured retention and was solely responsible for claims up to that amount, as well as administering claims.

Accordingly, the court concluded sections 1861.01 (concerning approved rates) and 381, subdivision (f) (concerning disclosure of premium) did not apply to Midway's interaction with its customers and there was nothing unlawful or fraudulent about Defendants' conduct that created UCL liability. The court also found Plaintiffs had not suffered any actual economic injury, because the fees Midway charged were fully disclosed, Plaintiffs obtained the bargained for insurance at the bargained for price, and Plaintiffs failed to establish Midway's optional insurance charges were in

15

excess of the charges for such insurance by other rental car companies.

Following entry of judgment in favor of Midway and the Insurer Defendants, Plaintiffs timely appealed.

## IV.  DISCUSSION

### A.  Standard of Review

The parties do not dispute the facts set forth in the statement of decision, and their arguments are focused on the trial court's conclusions of law.  "We view all of the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict to the support the judgment.  [Citation.] 'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact. . . .  We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment.' " (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24.)  Pure issues of law and application of law to undisputed facts are both reviewed de novo.  (*Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617; *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

### B.  The UCL

The business of insurance is subject to the UCL.  (§ 1861.03, subd. (a).)  "To bring a UCL claim, a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.' " (*Lippitt v. Raymond James Financial Services Inc.* (9th Cir. 2003) 340 F.3d 1033, 1043.)

16

Because the UCL is written in the disjunctive, " 'it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)

Plaintiffs here pursued claims based on the "unlawful" and "fraudulent" prongs. "Unlawful" conduct includes any business practice or act forbidden by local, state or federal statutes or by regulations or case law. (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 676; see also *Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 396.) With regard to the fraudulent prong, a plaintiff " 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.' " (*Kwikset Corp v. Superior Court* (2011) 51 Cal.4th 310, 362; see also Bus. & Prof. Code § 17204.) Put another way, "a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." (*Id.* at p. 326, fn. 10.)

Despite the UCL's broad language, the scope of a court's power under that law "is not unlimited." (*Cel-Tech*, *supra*, 20 Cal.4th at p. 182.) "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." (*Ibid.*)

### C.    There Was No Fraudulent Omission

Plaintiffs assert that section 381, subdivision (f) required Midway and the Insurer Defendants disclose to them the premium

17

Midway paid to the Insurer Defendants, and the failure to do so was a fraudulent omission under the UCL. The parties do not dispute the general provisions of the Insurance Code (including section 381) govern the relationship between the Insurer Defendants and their insured Midway. The parties' fundamental disconnect stems from whether the relationship between Midway and its rental car customers is governed by the general provisions of the Insurance Code, or by more specialized provisions addressing rental car agencies. We resolve this dispute by adhering to the well-established principle that " 'more specific provisions take precedence over more general ones.' " (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960.) Section 37 aptly summarizes this rule as it pertains to the Insurance Code: "Provisions of this code relating to a particular class of insurance or a particular type of insurer prevail over provisions relating to insurance in general or insurers in general."

Car rental agencies like Midway have their own licensing and disclosure requirements under the Rental Car Agents Act, and their own set of permitted and prohibited acts. (E.g., §§ 1758.8, 1758.81–1758.86.) The trial court correctly applied those requirements in concluding Defendants did not engage in any fraudulent omission. Plaintiffs' claim that section 381, subdivision (f) required disclosure to them of the premium paid by Midway disregards the disclosure requirements applicable to Midway as a limited rental car agent, which are different than those applicable to a general agent. It also disregards that the named insured under the policies was Midway, not Plaintiffs. And finally, it ignores the Insurer Defendants' specific statutory disclosure obligation under the Rental Car Agents Act when issuing a car rental insurance policy like the ones at issue here.

18

### 1. The Rental Car Agents Act, Not More General Insurance Provisions, Applies to the Disclosure at Issue

Section 1758.8 gives a rental car agent two options should it wish to offer insurance—it can become a general agent (§ 1758.8, subd. (a)), or a limited agent (§ 1758.8, subd. (b)). Midway and the Insurer Defendants chose the more limited agency. Treating these two types of agencies as equivalent, as Plaintiffs do, obliterates the statutory distinction between them set forth in the Rental Car Agents Act.

A general agent is obligated to give an insured a copy of the policy, and that policy must include the premium amount. (§§ 383.5, 381, subd. (f).) As a limited agent, however, Midway was not statutorily required to provide its policy with the Insurer Defendants to rental car customers, nor was it required to disclose the premium amount paid by Midway. Instead, the Code requires a limited agent such as Midway to "[s]ummarize the material terms and conditions of coverage offered to renters, including the identity of the insurer," and "[d]isclose any additional information on the price, benefits, exclusions, conditions, or other limitations of those policies that the commissioner may by rule prescribe." (§ 1758.86, subd. (b).) Midway did as it was required.[7]

---

[7] Plaintiffs direct us to no such prescribed regulations requiring disclosure of the amount paid by Midway to the Insurer Defendants. Plaintiffs argue in the absence of such regulation that the premium Midway paid was a material term of the coverage offered, and therefore Midway was obligated to disclose it pursuant to section 1758.86. We disagree. The cost to the consumer is a material term and was disclosed. The premium paid by Midway, its self-insured retention and associated loss experience, claims

19

As for the Insurer Defendants, they were obligated to give their insured (Midway) a copy of the policy, including the premium owed.  (§ 381, subd. (f).)  They were not required, however, to make sure that policy was also provided to rental car customers.  Instead, under the Rental Car Agents Act, the requirement regarding the policy itself is that the insurer file a copy of the policy issued to the rental car company with the DOI, "who shall make that policy available to the public."  (§ 1758.88.)  The Insurer Defendants did so.  If Plaintiffs wanted a copy of the policy itself, including any information in the policy, it was available to them through the DOI, as the Rental Car Agents Act specified.  More was not required.

Given the specific disclosure provisions in the Rental Car Agents Act, we reject Plaintiffs' further argument that *Troyke v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305 mandated disclosure to them of the premium amount.  In *Troyke*, policyholders received a declaration page from their insurer stating the purported premium, but were separately charged a billing service fee.  (*Id*. at pp. 1315—1316.)  Finding the premium to be the total amount the insureds were required to pay to obtain insurance coverage (which included the billing service fee), the *Troyke* court held the insurer did not comply with section 381, subdivision (f) because the service charge was not stated in the main policy, declaration page, or endorsements.  (*Id*. at p. 1334.)

*Troyke* addresses a classic insurer-insured scenario, in which the insurer is statutorily obligated to provide the insured a policy which states the premium.  The Insurer Defendants complied with

---

administration cost, and other elements that made up the price charged to the consumer were not material terms required to be disclosed in the absence of specific regulatory direction that consumers must be provided such a breakdown.

20

this statutory mandate by providing their insured Midway with a policy stating the premium. *Troyke* does not address the Rental Car Agents Act, the more specific disclosures required of licensees under that Act to rental car customers, or the insurer's obligation under the Act not to provide the policy to rental car customers, but rather to make it publicly available through a filing with the DOI. Given the differing statutory standards, *Troyke* did not obligate the defendants to provide the policies between Midway and the Insurer Defendants, or the premium amount in those policies, to Plaintiffs.

> **2.     *Plaintiffs Demonstrate No Conflict Between the Rental Car Agents Act and Proposition 103***

Proposition 103 was a constitutional amendment, and as a fallback Plaintiffs argue that its provisions trump those set forth in the Rental Car Agency Act's licensing and disclosure regime. (E.g., *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1354, 1365 [Legislature lacks the authority to amend Proposition 103 except to further the initiative's purposes].) We perceive no conflict between Proposition 103 and the Rental Car Agents Act requiring we declare the licensing or disclosure regime set forth in the Rental Car Agents Act unconstitutional. Proposition 103 addresses the obligations of insurers, including general agents of insurers. The Rental Car Agents Act, in contrast, addresses the obligations of limited rental car agents offering only specific types of insurance in connection with car rentals.

Both the DOI and the Legislature have similarly concluded that the Rental Car Agents Act legislated in an area not yet occupied by Proposition 103 or other general Insurance Code provisions. For example, in 1999 (i.e., after the passage of Proposition 103), the DOI issued a report from its Insurance

21

Producer Licensing Working Group. The DOI noted "[t]here is no specific scheme in California's law" for the sale of insurance by rental car companies, and it made recommendations to create an "organizational license" similar to that required for car dealers to govern such sales. When the Rental Car Agents Act was enacted a year later, the Legislature acknowledged the Working Group's statement that rental car agencies selling insurance in connection with car rentals were not previously subject to insurance agency provisions. (§ 1758.891 [noting that prior to effective date of Act, rental companies are not required to obtain a license to offer insurance products].)

## D. The Insurer Defendants Did Not Charge an Unapproved Rate

Plaintiffs next argue rental car customer payments to Midway for insurance coverage should be imputed to the Insurer Defendants, meaning the Insurer Defendants thus charged and collected more than the statutorily approved rate. Neither the Insurance Code nor case law supports this argument.

### 1. *Midway Is Not a General Agent*

Plaintiffs first argue rental car customer insurance payments to Midway should be imputed to the Insurer Defendants as premium because Midway was the insurers' agent, and any fees received by an agent are premium.

While Midway was an agent for some purposes, the type of agency it held matters. In circumstances where a party is a general agent, there is plentiful authority that "premium includes all payment made by an insured that are part of the cost of insurance, including 'all sums paid to an insurance agent.'" (E.g., *Mercury Ins. Co. v. Lara* (2019) 35 Cal.App.5th 82, 97 (*Lara*); see also *Elfstrom v. New York Life Ins. Co.* (1967) 67 Cal.2d 503 (*Elfstrom*).)

Plaintiffs' reliance on this authority is misplaced, however, because these cases involve the type of general agency sufficient to hold a principal vicariously liable as opposed to the more limited agency present here.[8]

In *Elfstrom*, an employer offering a group life insurance plan to employees was found to be the agent of the insurer (as opposed the agent of its employee) where the employer prepared an application for coverage containing misstatements, which led to the employee's claim being denied. (67 Cal.2d at pp. 512–513.) Our Supreme Court reached this conclusion, inter alia, because the insurer was directing and otherwise in control of the performance of the employer's administrative acts. (*Id*. at pp. 513–514.) Here, in contrast, there was no evidence the Insurer Defendants were directing and/or controlling Midway's actions. *Lara* was an appeal that followed an earlier decision in *Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924 (*Krumme*). *Krumme* analyzed the

---

[8]  The parties also cite to *In the Matter of American Reliable Insurance Company* (June 30, 2006) Dept. of Ins. File No. DISP 06091926 (*American Reliable*), which the DOI ordered designated as precedential pursuant to Government Code section 11425.60, subdivision (b). The Office of Administrative Law (OAL), however, later determined *American Reliable* to be an "underground regulation" that was not adopted pursuant to the Administrative Procedure Act as required. (See Cal. Reg. Notice Register 2007, No. 17-Z, p. 726.) An OAL determination that administrative guidance is an underground regulation is not binding on the courts, but is entitled to deference. (*People v. Medina* (2009) 171 Cal.App.4th 805, 814.) We need not resolve the propriety of OAL's determination regarding *American Reliable* to decide this appeal in light of similar judicial precedent on the issue of agency, and accordingly express no opinion on the underground regulation question.

agency question pursuant to the general agency and broker statutes, sections 1621 and 1623, which as discussed above are inapplicable to Midway.  (*Id*. at pp. 928–929.)  *Lara* later adopted *Krumme*'s findings in this regard in concluding the premium at issue there included sums paid to brokers who "were not actually brokers but were de facto agents."  (*Lara*, *supra*, 35 Cal.App.5th at p. 97.)

Midway's agency under the Rental Car Agents Act is significantly more limited and constrained than that of a general agent.  The evidence showed, and the trial court found, that unlike a general agent Midway had no authority to bind the Insurer Defendants.  A general agent has broad ability to sell different types of insurance.  (E.g., § 1621.)  As a limited agent, Midway cannot sell insurance other than "in conjunction with, and incidental to, authorized rental agreements" (§ 1758.87, subd. (a)), and further can sell only certain limited types of such insurance (§ 1758.85).  General agents sell policies.  Midway does not sell insurance policies but rather extends coverage under a master policy issued to it incidental to its primary business of renting cars. If asked, general agents may assist individuals in understanding their existing coverage.  As a limited agent, Midway is required to state it is not qualified or authorized to evaluate the adequacy of any existing coverage the car rental customer may have. (§ 1758.86, subd. (c)(3).)  As discussed above, Midway is subject to different disclosure requirements than a general agent.  General agents are compensated by commission.  Midway, on the other hand, was not paid by the Insurer Defendants for placing insurance, but rather was itself paying the insurers for insurance issued to it.

Additionally, unlike a general agent Midway does not underwrite policies or apply underwriting criteria on behalf of the

insurers.  Midway had no authority to issue a binder—that is, a document evincing insurance during the application process before an insurance policy is actually issued and delivered to the insured.  The rates charged by Midway were preset and did not vary based on factors such as the driver's safety record.  Midway did not know the driving record of potential renters, did not know how many miles a renter drove in a year, and therefore did not and could not underwrite policies or offer good driver discounts to customers.  Nor could Midway modify coverage limits or terms, or refuse to offer coverage—it could chose only to whom it would or would not rent a car.

Given these many differences, the facts here do not support Plaintiffs' contention that Midway's agency was sufficiently robust to make Midway a general agent and therefore impute the funds received by Midway to the Insurer Defendants as premium.

### 2.	Cases Discussing Premium Taxation Do Not Support Plaintiffs' Imputation Argument

Plaintiffs additionally rely on *Metropolitan Life Ins. Co. v. State Bd. of Equalization* (1982) 32 Cal.3d 649 (*Met Life*) to argue customer payment to Midway must be imputed to the Insurer Defendants.  In *Met Life*, our Supreme Court addressed an insurer's obligation to pay taxes based on gross premium received.  (*Id.* at pp. 652—653.)  Met Life offered a group medical insurance plan to employers to cover their employees.  Met Life and the employers sought to reduce the premium tax owed by Met Life through an arrangement whereby the employer paid less premium in return for covering employee claims up to a certain amount each month (the so-called trigger point).  (*Id.* at p. 653.)

The Supreme Court found payments made by the employer up to the trigger-point were still premium taxable to the insurer,

25

because the employer was acting as the insurer's agent. Among other things, Met Life determined the amount of all claim payments (whether below or above the trigger point), actually paid many of the claims below the trigger point based on funds deposited with it, remained liable if the employer failed to pay any claim below the trigger point, and continued to bear other insurance risk putatively belonging to the employer. (*Met Life*, *supra*, 32 Cal.3d at pp. 657—658.) Therefore, the employer and insurer had a "highly entangled, symbiotic relationship" that made the employers the insurer's agent, thus requiring premium be imputed to the insurer and therefore taxed. (*Id.* at p. 658.)

The central teaching of *Met Life*, insofar as it applies here in a nontax matter, is that we must "discern the true economic substance" of the parties' arrangement when determining questions of agency and premium imputation. (32 Cal.3d at pp. 656—657.) The true economic substance here did not involve the Insurer Defendants acting in a way that would make amounts paid to Midway properly attributable to the Insurer Defendants. The Insurer Defendants did not retain meaningful risk below the self-insured retention level. Midway was responsible for administering claims and incurred the costs for such administration. The trial court did not find the Insurer Defendants were involved with or directed how Midway paid claims, or find facts suggesting the operations of Midway and the Insurer defendants were highly tangled or inextricably intertwined.

Later cases have confirmed that where (1) the insurer does not retain meaningful insurance risk for claims below the self-insured retention, (2) a party like Midway acts independently, and (3) the operations of the parties are not inextricably intertwined, a party like Midway is not an agent and the amount it receives from its employees (or in this case its customers) is not imputable to the

26

insurer.  (E.g., *Lincoln National Life Ins. Co. v. State Bd. of Equalization* (1994) 30 Cal.App.4th 1411, 1416—1422; *Prudential Ins. Co. v. State Bd. of Equalization* (1993) 21 Cal.App.4th 458; *Aetna Life Ins. Co. v. State Bd. of Equalization* (1992) 11 Cal.App.4th 1207, 1212—1213.)

### E. Midway Was Not Required to Charge its Customers the Premium It Paid to the Insurer Defendants

Moving beyond the Insurer Defendants, Plaintiffs' final argument is Midway was required to charge no more than the premium it paid to the Insurer Defendants.  We find no support in the record for this claim.  Midway did not charge in excess of the approved rate, because what Plaintiffs identify as the approved rate related to the insurance relationship between Midway and the Insurer Defendants, not the relationship between Midway and its rental car customers.  Civil Code section 1939.19, subdivision (c), permitted Midway to impose charges for insurance in addition to the rental rate it charged (how much additional the statute does not say).  Insurance Code section 1861.01's rate approval requirements govern the actions of insurers and their general agents.  Midway is not an insurer but an insured, and it is not the general agent of an insurer.[9]  Nor was Midway able to do the things required for a rate

---

[9]    Midway's self-insured retention under the RLP policies did not make it an insurer, as the principal object and purpose of the transaction between Midway and its customers was the rental of an automobile, and reallocation of risk in the event of an accident through a partial self-insured retention was tangential to that principal object and purpose.  (Cf. *Heckart v. A-1 Self Storage, Inc.* (2018) 4 Cal.5th 749, 758—764 [storage unit protection plan sold by self-storage company did not constitute insurance subject to regulation under the Insurance Code]; *Truta, supra,* 193 Cal.App.3d

filing, as it did not have the authority nor the information to underwrite.

Additionally, it is important to note the approved rates here as between Midway and the Insurer Defendants contemplated Midway would impose an additional charge in offering coverage to customers. The Insurer Defendants' filings, as well as communication with the DOI, indicated the policy rates were only for the insured rental car company, not others. The RLP policies filed with the DOI and approved by it indicated an insured like Midway would have a self-insured retention. It was therefore obvious that a rental car company like Midway would charge more than the premium paid to the Insurer Defendants to account for that self-insured retention and related costs—the policy made no economic sense otherwise.

While the SLI policies did not have a similar self-insured retention, the DOI understood the rental car agency purchasing coverage would charge more than the premium set forth in the commercial contract, and the DOI indicated that so long as the insurer was not directly or indirectly receiving any additional money beyond premium paid to the insurer, the DOI would not seek to restrict the amount. The Insurer Defendants received no such additional money.

Finally, with regard to the PAC policy filed with Arizona, it disclosed both the "wholesale" price to the rental car company and

---

at p. 814 [CDW did not "have the effect of converting [car rental companies] into insurers subject to statutory regulation" because "[t]he principal object and purpose of the transaction . . . , the element which gives the transaction its distinctive character, is the rental of an automobile."].)

28

the retail price to the rental car customer. Midway's charges for PAC conformed to the retail prices set forth in that agreement.

### F. Judicial Abstention

The regulation of insurance is a complex area in which courts are often ill-equipped to resolve complicated fact and policy issues tied to the economics, risks, cost and availability of insurance. Given these complexities, we asked for supplemental briefing from the parties on the wisdom of judicial abstention. This doctrine, alternatively called primary jurisdiction, " 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' " (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390, italics omitted.) All parties argue such abstention would be inappropriate here and having considered their submissions we agree.

First, the DOI lacks a clear administrative process to address Plaintiffs' claims, which concern the statutory scheme applicable to insurance rates and not individual rate making decisions. (§ 1858, subd. (a); *Farmers Ins. Exchange*, *supra*, 2 Cal.4th at pp. 384—385; *MacKay v. Superior Court* (2010) 188 Cal.App.4th 1427, 1441.) Second, while we give appropriate deference to the DOI's interpretation of the insurance statutes (for example where the DOI has a long-standing interpretation of a statute or has adopted a formal regulation interpreting a statute), statutory interpretation is an issue we must ultimately decide. (*Automotive Funding Group, Inc. v. Garamendi* (2003) 114 Cal.App.4th 846, 851; see also *Heckart v. A-1 Self Storage, Inc.*, *supra*, 4 Cal.5th at p. 769.)

29

Finally, and perhaps most importantly, judicial abstention is not necessary given the facts before us. To underscore this point, we close by highlighting that nothing in our decision here restricts the DOI's future ability to seek to regulate in this area should it so choose. Here, the DOI approved policies understanding the rental car company would be charging its customers an amount in addition to the premium it paid to the insurer. That arrangement allowed Midway to offer insurance at rates comparable to its competitors, whereas alternate arrangements may not have. Plaintiffs' position, which we reject, would effectively preclude any self-insured retention by a car rental company purchasing a commercial policy, because a self-insured retention requires the ability to charge more than the premium paid by the rental car company to its insurer. In the absence of controlling authority, we do not believe it appropriate to impose by judicial fiat a one size fits all solution to rental car coverage insurance arrangements.

Self-insured retentions and markups of the commercial policy rate to rental car customers may be good, bad, or indifferent—that is a regulatory judgment we do not make and leave to the special competence of the DOI. To the extent the DOI may seek in a future filing review to disapprove of a self-insured retention or other arrangement that results in a rental car company charging more than the premium it pays under a commercial policy, or may seek to regulate the end charge to the rental car customer, nothing in our decision should be read to delimit the scope of the DOI's authority in that regard one way or the other.

Similarly, nothing before the trial court suggested Midway was charging disproportionately high or deceptive rates for insurance. Midway disclosed its fees for insurance coverage to its customers and charged prices comparable to what its competitors charged. The Rental Car Agents Act gives the DOI authority to

30

promulgate regulations regarding disclosure, including concerning price as well as any limitations of the insurance purchased from a rental car agent. (§ 1758.86, subd. (b)(3).) The trial court noted, as do we, that the Commissioner has not prescribed any regulations concerning the price for insurance coverage charged by car rental agents. To the extent the DOI wants to mandate disclosure of the underlying rate paid by the rental car company to its insurer (as Plaintiffs suggest), or impose other regulation pursuant to section 1758.86, subdivision (b)(3), nothing in our opinion restricts the DOI's authority to do so.

## V.  DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>


WEINGART, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

\* Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice, pursuant to article VI, section 6 of the California Constitution.

31